**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50047**

|  |  |  |
|---|---|---|
| In the Interest of: John Doe I and Jane Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | **Filed: December 8, 2022** |
| Petitioner-Respondent, | ) ) | **Melanie Gagnepain, Clerk** |
| v. | ) ) ) | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT** |
| JOHN DOE (2022-38), | ) ) | **BE CITED AS AUTHORITY** |
| Respondent-Appellate. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John B. Lothspeich, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Migliuri & Rodriguez, PLLC; Anja Rodriguez, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

Williams, Meservy & Larsen, LLP; Theodore R. Larsen, Jerome, for Guardian Ad Litem.

_____

HUSKEY, Judge

John Doe appeals from the magistrate court's judgment terminating his parental rights. Doe alleges the magistrate court erred in finding that he neglected the minor children and termination of his parental rights is in their best interests. The magistrate court's finding that Doe neglected the children is affirmed on the uncontested basis and substantial and competent evidence supports the court's finding that termination of Doe's parental rights is in the best interests of the children. Accordingly, the magistrate court did not err and the judgment terminating Doe's parental rights is affirmed.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological father of B.G. and L.W; however, Doe's paternity of L.W. was not initially known and was established during the child protection proceedings.[1] After L.W. tested positive for methamphetamine and amphetamine at the time of her birth, the Idaho Department of Health and Welfare (Department) took L.W. into care and shortly thereafter, also took B.G. into care. After two shelter care hearings, the magistrate court granted the Department temporary custody of the children.

As Doe was initially the non-offending parent, the magistrate court indicated that B.G. may be placed into Doe's care for an extended home visit once suitable housing was approved and Doe completed drug testing. Because Doe's paternity of L.W. was not yet established, L.W. could not be placed with Doe. However, Doe subsequently tested positive for methamphetamine and therefore neither B.G. (nor L.W. once paternity was established) could be placed into his care. The magistrate court ordered a case plan for Doe as part of reunification efforts.

The State filed a petition to terminate Doe's parental rights to the children and after a trial, the magistrate court found Doe neglected the children and termination of his parental rights is in their best interests.[2] Accordingly, the magistrate court entered a judgment terminating Doe's parental rights to the children. Doe timely appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143

---

[1]    Doe was not aware he was L.W.'s biological father until paternity testing occurred as part of these proceedings.

[2]    Mother's parental rights were also terminated but are not the subject of this appeal.

Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

### III.

### ANALYSIS

Doe alleges the magistrate court erred in terminating his parental rights to the children because substantial and competent evidence did not support its findings that he neglected the children and termination of his parental rights is in their best interests. In response, the State argues the magistrate court did not err.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

3

**A.      The Magistrate Court Did Not Err in Finding Doe Neglected the Children**

Doe alleges the magistrate court erred in finding that he neglected the children because "[t]he evidence in the instant case is that [he] was the non-offending parent and he did participate in his case plan and substantially completed the case plan tasks that were ordered." Doe outlines the case plan tasks he believes he completed, including participating in a diagnostic assessment, beginning substance abuse treatment, maintaining consistent and stable employment, and regularly contacting the children for at least part of the case.

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found alternate statutory bases for terminating Doe's parental rights. First, Doe neglected the children by failing to comply with the terms of his case plan. Second, Doe neglected the children through his drug use, failure to provide any child support during the proceedings, and failing to consistently participate in visitation.[3] However, on appeal, Doe only challenges the magistrate court's finding of neglect by failing to comply with the terms of his case plan. Doe does not challenge the magistrate court's conclusion that he neglected the children for reasons other than failing to comply with this case plan. Where a lower court makes a ruling based on two alternative grounds and only one of those grounds is challenged on appeal, the appellate

---

[3]      We note that the magistrate court does not explicitly identify how each of these bases constitute neglect pursuant to Idaho Code § 16-1602(31)(a). Nonetheless, because each of the bases could constitute neglect pursuant to I.C. § 16-1602(31)(a) and because Doe does not challenge any of these alternate grounds as a basis for a statutory finding of neglect, we need not further address the lack of specificity.

court must affirm on the uncontested basis. *Rich v. State*, 159 Idaho 553, 555, 364 P.3d 254, 256 (2015). Accordingly, we affirm the magistrate court's finding of neglect on the uncontested basis.

**B. The Magistrate Court Did Not Err in Finding Termination of Doe's Parental Rights Is in the Best Interests of the Children**

Doe argues the magistrate court's finding that termination of his parental rights is in the best interests of the children is not supported by substantial and competent evidence because "[t]he evidence presented at trial is that the children did not substantially improve while in foster care, and continued to struggle with behavioral issues," "[t]he children have been bonded to their parents for all of their lives," Doe "substantially complied with his case plan," Doe has a "plan in place for reunification once he is released" from incarceration, and "there is no guarantee that the Department will be able to find an adoptive family or guardianship for the children." Despite not pointing to any evidence in the record to support the majority of these factual assertions, Doe nonetheless alleges they "should weigh in [his] favor and the court should not have terminated his parental rights."

As previously articulated, our review is limited to whether substantial and competent evidence supports the magistrate court's decision and, further, we will not reweigh the evidence presented at the termination trial. *See State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007) (holding trial courts have unique ability to weigh evidence and take entire situation into account). Accordingly, to the extent Doe is requesting that we reweigh the evidence presented at the termination trial, we decline to do so. However, to the extent Doe is alleging that substantial and competent evidence does not support the magistrate court's finding that termination of his parental rights is in the best interests of the children, we disagree.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests

of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found termination of Doe's parental rights is in the best interests of the children because the children showed significant improvements while in foster care; needed a safe, stable, drug-free, and permanent home; and could not wait any longer for Doe to prove himself capable of providing this level of care. The magistrate court acknowledged Doe's genuine love and affection for the children, but found Doe was unable to translate his love into being a clean, capable, and responsible parent. These findings are supported by substantial and competent evidence.

First, contrary to Doe's assertion on appeal, the magistrate court did not find that the children no longer had any behavioral issues; it found that the children showed significant improvements during their time in foster care. This finding is supported by substantial and competent evidence. Anne Sharp, the children's guardian ad litem, testified that she tracked Doe's progress for nearly two years of the case and witnessed the children in a variety of environments. Sharp explained that while she witnessed a trajectory of behavioral improvements in other foster homes, the current foster parents were proactive, engaged, and attuned to the children's needs, and the children made significant improvements while in their care. She explained the children were doing the best she had ever seen them do; they were emotionally regulated, stable, well-behaved, and grounded. Sharp also testified that the children's speech and communication in general had improved and they were no longer as physically aggressive with each other as they had been in the past.

Similarly, Rosa Paz, the current case manager for the Department, testified that during the eight months she had been assigned to the case, she had witnessed significant improvements in the children's behavior. She specifically explained that she had seen "significant" improvements in B.G.'s behavior and, while L.W. still demonstrated some attachment issues, she had become more developmentally on track. Jessica Adamson, a social worker with the Department, who was the assigned case manager for the case from August 2021 through January 2022, also testified that she had seen the children's behavior improve while they were in care. Accordingly, substantial and competent evidence supports the magistrate court's finding that the children showed significant improvements while in foster care.

6

Second, the magistrate court's finding that the children needed a safe, stable, drug-free, and permanent home, and could not wait any longer for Doe to prove himself capable of providing this level of care is supported by substantial and competent evidence. Sharp testified that Doe was unable to provide the children with the safe and stable environment which they needed. Sharp explained that over the two years of the case, Doe did not attend the vast majority of visitations and Sharp did not believe he had competed any case plan tasks. She testified that the children had already waited beyond what was normal and reasonable for their parents to improve and she believed it is in the best interests of the children for Doe's parental rights to be terminated.

The two case managers for the Department expressed similar concerns and conclusions. Adamson testified that while she was the case manager, Doe lacked any involvement with the children and despite Adamson's attempts, she had no contact with Doe during the case. Adamson also testified that Doe told another case manager he did not want the children and the Department should proceed to adoption. Ultimately, Adamson believed that it was "absolutely" in the best interests of the children for Doe's parental rights to be terminated because Doe lacked any involvement in the case or with the children. Paz testified that she was not able to communicate with Doe when she first became the case manager because she could not locate him, but she acknowledged communication had improved over the last couple of months because Doe's current incarceration made his location easier to determine. Paz stated Doe was not able to work his case plan while incarcerated, and upon Doe's release from incarceration, it would require nine months or so for the Department to think about sending the children to live with Doe or that he was a viable placement option for the children. Paz similarly testified that she believed termination of Doe's parental rights is in the best interests of the children.

Doe testified that he loves the children and he tried to work his case plan, but he was not able to develop a strong bond with the children during the pendency of the child protection case, faced substance abuse issues throughout the proceedings, and may not be able to provide the children with a home for several years. Doe testified that since learning L.W. was his daughter, he saw L.W. at least five times, but he never had enough time to get to know her or form a bond with her. While he stated that he and B.G. "started to bond quite a bit," he had to cancel some visitations because they conflicted with his work schedule and were not rescheduled, and later, he was unable to attend visitations because of his incarceration.

7

Doe additionally testified that his methamphetamine addiction had been an "[o]ff-and-on" issue for much of his adult life, led to a break up of a previous eleven-year relationship, and led to losing custody of his two other children. Doe admitted that he used methamphetamine three times throughout the child protection case, including in the summer of 2021. Doe explained that he was currently incarcerated for a probation violation stemming from his methamphetamine relapse and failure to subsequently attend substance abuse treatment. While Doe testified there was potential for his release at the end of his period of retained jurisdiction in November 2022, he also acknowledged that if he was not released, he had "somewhere between a year and three years" left to serve on his sentence. Doe stated he had access to employment upon release from incarceration, but obtaining housing was "a little difficult" and he may have to go to a halfway house that was close to his work until he could find more permanent housing. As such, substantial and competent evidence supports the magistrate court's finding that Doe was unable to provide the level of care, safety, and stability the children needed.

Taken together, substantial and competent evidence supports the magistrate court's finding that termination of Doe's parental rights is in the best interests of the children because the children improved while in foster care and Doe was unable to provide the level of care, safety, and stability the children needed. Accordingly, the magistrate court did not err.

### IV.

### CONCLUSION

The magistrate court's finding that Doe neglected the children is affirmed on the uncontested basis. Additionally, substantial evidence supports the magistrate court's finding that termination of Doe's parental rights is in the best interests of the children. Accordingly, the magistrate court did not err and the judgment terminating Doe's parental rights is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.